Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III

| | | |
|---|---|---|
| EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>GERARDO GONZÁLEZ COLLAZO<br><br>Peticionario<br><br>****************<br><br>EL PUEBLO DE PUERTO RICO<br><br>Recurrido<br><br>v.<br><br>OSCAR MARTÍNEZ HERNÁNDEZ<br><br>Peticionario | KLCE202301313 | *Certiorari*<br>Procedente del Tribunal de Primera Instancia,<br>Sala de ARECIBO<br><br>Caso Núm.:<br>C VI1998G0007 y otros<br><br>Sobre:<br>Asesinato en 1er grado y otros<br><br>******************<br><br>Caso Núm.:<br>C VI1998G0005 y otros<br><br>Sobre:<br>Asesinato en 1er grado y otros |

Panel integrado por su presidente el Juez Figueroa Cabán, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de febrero de 2024.

El 27 de noviembre de 2023, Gerardo González Collazo y Oscar Martínez Hernández (en adelante conjuntamente los peticionarios) sometieron ante este Tribunal de Apelaciones una *Petición de certiorari* mediante la que nos solicitan la revisión y revocación de la *Resolución* emitida el 26 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Arecibo (en adelante, TPI o foro primario).[1] Por medio de este dictamen, tras celebrar la correspondiente vista evidenciaria, el TPI denegó

---

[1] El aludido dictamen fue notificado el 27 de octubre de 2023.

Número Identificador

RES2024 _____

las mociones que los peticionarios sometieron al amparo de la Regla 192.1 de Procedimiento Criminal y en solicitud de nuevo juicio.

Evaluados los planteamientos de los peticionarios, así como aquellos levantados por la Oficina del Procurador General, y con el beneficio de la transcripción de la regrabación de la vista celebrada el 28 de junio de 1999, así como de aquellas acontecidas el 27 de febrero y 19 de mayo de 2023, nos disponemos a resolver.

I

El 9 de enero de 1998, el Ministerio Público presentó contra los peticionarios respectivas acusaciones por los delitos de asesinato en primer grado del entonces vigente Código Penal de 1974, así como otras por violaciones a múltiples delitos graves codificados en ese entonces en la Ley de Armas de 1951. Tras los trámites de rigor y habiéndose celebrado el juicio ante Jurado, el 2 de julio de 1999 estos fueron declarados culpables., siendo sentenciados el día 15 del mismo mes y año.

Así las cosas, en distintas fechas los peticionarios sometieron un escrito al amparo de la Regla 192.1 de Procedimiento Criminal, solicitud de nuevo juicio y memorando de derecho. [2] Así, en sus escritos, ambos peticionarios relataron que en medio del juicio celebrado en su contra, la Jurado, Sra. Maribel Avilés (en adelante Jurado Avilés), notificó al TPI que uno de ellos- Gerardo- se detuvo frente a su negocio OK Printing y miró en varias ocasiones en dirección a OK Printing; que dicho acto la puso sumamente nerviosa y temerosa y que lo sucedido le fue contado a otra de las personas seleccionadas como jurado, la Sra. Blanca Malavé Peña. Continuaron informando que ante esta situación se celebró en medio del juicio una vista evidenciaria y que, durante la misma, la Jurado Avilés manifestó que lo ocurrido no afectaría la decisión que estaba llamada a

---

[2] Oscar Martínez Hernández sometió una *Moción bajo la Regla 192.1 (a) y (d) de Procedimiento Criminal y/o solicitud de nuevo juicio y memorando de derecho* el 21 de agosto de 2020. Similar escrito instó Gerardo González Collazo el 5 de febrero de 2021.

tomar en cuanto a la culpabilidad de los acusados. Asimismo, en sus respectivas mociones los peticionarios informaron al foro primario que el 6 de diciembre de 2018, uno de los abogados que les representó durante el proceso criminal se encontró con la Jurado Avilés y que durante la conversación que sostuvieron esta indicó recordar el caso, así como los eventos particulares que condujeron a la vista evidenciaria. Específicamente, señalaron que la Jurado Avilés, contrario a lo manifestado en la audiencia evidenciaria celebrada, manifestó que la aparición de Gerardo frente a su negocio se lo contó a todos sus compañeros. Los peticionarios reclamaron que esta expresión demuestra que la Jurado Avilés mintió durante la vista evidenciaria y que dicha mentira exigía la celebración de un juicio imparcial en el que el jurado no hubiera sido contaminado con prejuicios.

El Ministerio Público se opuso a dichas peticiones. El TPI celebró vista evidenciaria en cuanto al asunto los días 27 de febrero y 19 de mayo de 2023. Luego de esto, el TPI dictó la *Resolución* que el recurso de epígrafe impugna. En esta, concluyó que la prueba desfilada durante la vista evidenciaria no demostró que el proceso deliberativo llevado a cabo por el jurado durante el juicio celebrado en contra de los peticionarios se haya afectado y, por consiguiente, era insuficiente en derecho para conceder el remedio solicitado por estos, denegando así su petición.

Particularmente, al explicar su decisión, el TPI consignó en la resolución impugnada como a continuación transcribimos:

> De entrada, a nuestro entender, en su comparecencia los convictos parecen intuir que el mero hecho de que haya acontecido la conversación entre el Lcdo. Cerezo Torres y la jurado Maribel Avilés, unido a las particulares conclusiones que de ello estos arriban, sobre el proceso deliberativo llevado a cabo diecinueve (19) años antes, los hacen acreedores, sin más, del remedio solicitado. Según antes examinado, la presunción de regularidad e imparcialidad del jurado requiere la necesidad de prueba *prima facie* de prejuicio real y no implícito, para rebatir esta. Ante ello, la mera ocurrencia de una conversación de tipo causal acontecida luego de transcurrido un periodo sustancial de tiempo, y las conclusiones, sin más, que sobre ello realizan los convictos, nos parecen insuficientes para rebatir la presunción discutida.

Así las cosas, el testimonio del Lcdo. Cerezo Torres sobre lo supuestamente relatado por la jurado Maribel Rodríguez Avilés diecinueve (19) años después de celebrado el juicio de los convictos sobre el incidente ocurrido el sábado 26 de junio de 1999, durante una conversación casual ocurrida en la Farmacia Walgreens en Arecibo, según narrada por este, no fue suficiente para sustituir el interrogatorio bajo juramento que brindó la jurado Maribel Rodríguez Avilés en la vista evidenciaria celebrada apenas dos (2) días luego del acontecimiento, donde, tal como se indicó, la memoria es más fresca y donde esta atestiguó que solo le comentó lo sucedido a la jurado Blanca Malavé Peña, así como que iba a juzgar con imparcialidad la causa solo a partir de la prueba presentada. A nuestro entender, el testimonio del Lcdo. Cerezo Torres en torno a las consecuencias de lo relatado por la jurado sobre el proceso deliberativo llevado a cabo diecinueve (19) años antes, parecer ser más sus propias y particulares impresiones y conclusiones lo cual sería cuando menos especulativos, más aún, cuando, como vimos, el mismo incidente, fue objeto de una vista evidenciaria y la conversación con el Lcdo. Cerezo fue una muy breve y casual.

[…]

Por otra parte, el Lcdo. Cerezo Torres sostuvo que constituía información nueva, que no se tenía en ese entonces, el que la jurado haya obtenido protección, aun cuando indicó desconocer en qué momento fue que se le otorgó la misma. En cuanto a esto, lo cierto es, tal como señaló el Ministerio Público, los entonces acusados dejaron de comparecer a la continuación del juicio previo al proceso de deliberación resultando en su declaración de prófugos. De ahí que lo alegado nos resulte insuficiente para sostener, como se pretende, que se haya afectado el proceso deliberativo.

En consideración a lo antes transcrito, el TPI resolvió denegar la moción de relevo de sentencia y petición de nuevo juicio sometida por los peticionarios. En desacuerdo con esta decisión, el 27 de noviembre de este año, estos instaron el recurso de epígrafe[3] y como único señalamiento de error, le imputan al TPI haberse equivocado al:

[…] denegar la solicitud de los peticionarios para la anulación de las sentencias impuestas al erróneamente resolver que lo afirmado por la jurado Maribel Avilés al licenciado César Cerezo Torres en diciembre de 2018 de que le contó a todos los miembros del jurado el incidente del 26 de junio de 1998, contrario lo declarado en la vista evidenciaria del 28 de junio de 1999 a los efectos de que sólo lo había narrado a la jurado Blanca Malavé, no es tendente a demostrar que se afectó el proceso deliberativo llevado a cabo. No obstante, la vista evidenciaria del 28 de junio de 1999 se celebró precisamente para garantizar los derechos constitucionales inherentes al proceso penal, para auscultar y determinar si las dos jurados con conocimiento del incidente podían juzgar y emitir un veredicto libre de prejuicios e imparcial. Al haber tenido conocimiento todos los miembros del jurado del incidente y al no haberse empleado el mismo procedimiento con los restantes jurados se privó a los peticionarios

---

[3] Ese mismo día sometieron también una *Solicitud de autorización para someter transcripción de la prueba.*

de los derechos al debido proceso de ley, a un juicio justo y a ser juzgados por un jurado imparcial.

Atendido el recurso, y habiéndose autorizado la transcripción de la prueba, tras varios trámites pertinentes a su estipulación, el 18 de enero de 2024 la acogimos. También ese día, establecimos el término disponible para que el peticionario sometiera alegato suplementario y el recurrido, su posición. En esa fecha, el peticionario sometió *Alegato suplementario*. Mientras, el Pueblo de Puerto Rico por conducto de la Oficina del Procurador General compareció en *Escrito en cumplimiento de orden* el 29 de enero de 2024. Con estas comparecencias, damos por sometido el asunto y resolvemos.

## II

### -A-

El vehículo procesal de *certiorari* permite a un tribunal de mayor jerarquía a revisar discrecionalmente las órdenes o resoluciones interlocutorias emitidas por una corte de inferior instancia judicial. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391, 403 (2021); 800 Ponce de León v. AIG, 205 DPR 163 (2020). La determinación de expedir o denegar este tipo de recursos se encuentra enmarcada dentro de la discreción judicial. *Íd*. De ordinario, la discreción consiste en "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". Medina Nazario v. McNeil Healthcare LLC, 194 DPR 723, 729 (2016). Empero, el ejercicio de la discreción concedida "no implica la potestad de actuar arbitrariamente, en una u otra forma, haciendo abstracción del resto del derecho." *Íd*.

Así, el examen de estos autos discrecionales no se da en el vacío o en ausencia de otros parámetros. McNeil Healthcare v. Mun. Las Piedras I, *supra*, a la pág. 404; 800 Ponce de León v. AIG, *supra*. Para ello, la Regla 40 de nuestro Reglamento establece ciertos indicadores a tomar en

consideración al evaluar si se debe o no expedir un recurso de *certiorari*.[4] Estos, pautan el ejercicio sabio y prudente de la facultad discrecional judicial. Mun. de Caguas v. JRO Construction, 201 DPR 703, 712 (2019). La delimitación que imponen estas disposiciones reglamentarias tiene "como propósito evitar la dilación que causaría la revisión judicial de controversias que pueden esperar a ser planteadas a través del recurso de apelación." Scotiabank v. ZAF Corp. et al., *supra*, 6ágs.. 486-487; Mun. de Caguas v. JRO Construction, *supra*.

-B-

La Regla 192.1 de Procedimiento Criminal, 34 LPRA Ap. II, R. 192.1, permite a cualquier persona que se encuentre detenida impugnar la sentencia condenatoria que extingue- aun cuando esta haya advenido final y firme. Pueblo v. Rivera Montalvo, 205 DPR 352 (2020). Ello, se hace mediante la presentación de una moción ante el Tribunal de Primera Instancia que la dictó en la que se alegue el derecho a ser puesto en libertad por cualquiera de los fundamentos siguientes:

(1) La sentencia fue impuesta en violación de la Constitución o las leyes del Estado Libre Asociado de Puerto Rico o la Constitución y las leyes de Estados Unidos; o
(2) el tribunal no tenía jurisdicción para imponer dicha sentencia; o
(3) la sentencia impuesta excede de la pena prescrita por la ley, o
(4) la sentencia está sujeta a ataque colateral por cualquier motivo.[5]

El recurso dispuesto en la Regla 192.1 de Procedimiento Criminal, *supra*, está disponible solamente cuando una sentencia adolece de un defecto fundamental que inevitablemente es contrario al debido proceso de ley. Pueblo v. Pérez Adorno, 178 DPR 946, 966 (2010). La referida Regla es

---

[4] Estos son: si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho; si la situación de hechos planteada es la más indicada para el análisis del problema; si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia; si el asunto planteado exige una consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados; si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración; si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio; si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia. 4 LPRA Ap. XXII-B, R. 40.
[5] Véase inciso (a) de la Regla 192.1 de Procedimiento Criminal, *supra.*

una de naturaleza excepcional y le permite al convicto revisar la sentencia en cualquier momento posterior, aun si la sentencia es final y firme. Regla 192.1, *supra*; Pueblo v. Contreras Severino, 185 DPR 646, 660 (2012); Pueblo v. Román Mártir, 169 DPR 809, 823-824 (2007).

La citada Regla, requiere además que se incluyan en la moción todos los fundamentos que tenga el peticionario para solicitar el remedio o, por el contrario, se entienden renunciados. Pueblo v. Román Mártir, *supra*. El Tribunal Supremo de Puerto Rico expresó que se limita a planteamientos de derecho y no puede utilizarse para revisar cuestiones de hecho. Pueblo v. Pérez Adorno, *supra*, en la pág. 966; Pueblo v. Román Mártir, *supra*, en la pág. 824; Pueblo v. Ruiz Torres, 127 DPR 612 (1990).

Al amparo del procedimiento bajo la discutida regla, la cuestión que ha de plantearse es si la sentencia impugnada está viciada por un error fundamental que contradice la noción más básica y elemental de lo que constituye un procedimiento criminal justo. Pueblo v. Rivera Montalvo, 205 DOPR 352 (2020), al mencionar a Pueblo v. Pérez Adorno, 178 DPR 946 (2014) y Pueblo v. Román Mártir, 169 DPR 809 (2007).

Asimismo, la Regla dispone que previo a la vista "el tribunal proveerá asistencia de abogado al peticionario si no la tuviere". Esta exige además lo siguiente:

> [El tribunal] se asegurará de que el peticionario ha incluido todos los fundamentos que tenga para solicitar el remedio, fijará y admitirá fianza en los casos apropiados, establecerá las cuestiones en controversia y formulará determinaciones de hecho y conclusiones de derecho con respecto a la misma. Si el Tribunal determina que la sentencia fue dictada sin jurisdicción […], o que ha habido tal violación a los derechos constitucionales del solicitante que la hace susceptible de ser atacada colateralmente, el tribunal la anulará y dejará sin efecto y ordenará que el peticionario sea puesto en libertad, o dictará una nueva sentencia, o concederá un nuevo juicio, según proceda. Regla 192.1, *supra*.

### III

El recurso de autos trata sobre una determinación que atiende asuntos post-sentencia por lo que el *certiorari* es el vehículo ideal para

recurrir en revisión judicial ante este Tribunal de Apelaciones. Por medio del mismo, los peticionarios aducen que el foro primario cometió grave error al no conceder su solicitud de nuevo juicio, pues conforme demostraron durante la vista evidenciaria celebrada, uno de los miembros del jurado que le juzgó mintió bajo juramento durante ciertas incidencias acaecidas durante el juicio. Para una mejor compresión, a continuación, transcribimos el testimonio del Licenciado Cerezo Torres que recoge su encuentro con la Jurado Avilés.

| | |
|---|---|
| […] | En el 6 de diciembre del 2018 yo estaba, en horas de la tarde… |
| Hon. Jueza: | Disculpe. ¿En qué fecha fue, testigo? |
| Testigo: | Seis de diciembre del 2018. |
| Hon. Jueza: | Ajá. |
| Testigo: | En horas de la tarde, probablemente 5:30, a esa hora, pues yo fui a la farmacia Walgreens, de aquí de la Avenida San Luis, la que ubica detrás del Tribunal, y entregué una receta de mi mamá para que me la procesaran. Y luego de haberla entregado, me dirigí a buscar algunos otros artículos a otra parte de la farmacia y entregué la receta, la dejé procesando. Entonces, salgo y allí está el pasillo 11, doblo en el pasillo 11, e inmediatamente que doblo en esa dirección para buscar los demás artículos coincidimos, verdad, de manera casual la señora Maribel Avilés Rodríguez y este, su servidor. |
| […] | |
| Testigo: | Y le digo "¿Usted recuerda que fue jurado en un caso mío?". Y ella me dice "Hace mucho tiempo. Claro, claro que recuerdo que fui jurado en un caso tuyo. Lo recuerdo muy bien, unos muchachos de La Perla", me dijo. "Hace… me dice "Dos, ¿verdad?". "Yo… Imagínate, me dijo, "Imagínate, ellos de La Perla fueron a comprar agua frente a mi oficina." |
| | Yo en ese momento, verdad, la estoy observando como un gesto de incredulidad, cuando me está diciendo que… como me dice "Imagínate, fueron a comprar agua al frene de mi oficina unos muchachos de La Perla". Refiriéndose a que había puesto en duda, verdad, Y me expresa, además, me dice "¿Usted creyó eso?". Y yo le dije "Claro que sí". Me dice "Ah, pues yo no". |
| | Me dice inmediatamente "Yo lo informé inmediatamente al Tribunal. El juez me mandó a buscar a su oficina **y yo se lo informé a todos mis compañeros**". Cuando me hizo esa expresión, pues |

> yo en ese momento me sorprendí, verdad. Fue una emoción encontrada porque eso no fue lo que doña Maribel Avilés Rodríguez declaró bajo juramento en el "voir dire" o en la vista evidenciaria que se celebró. Me dijo "ustedes hicieron un trabajo extraordinario, era una batería de abogados". Y luego me señala "A mi me dieron protección por bastante tiempo".
>
> En ese momento se acerca una dama, a la que ella me presenta… doña Maribel me presenta como su cuñada, con mucha prisa. Y le dice "Vamos", como dándole urgencia, verdad. Y ella inmediatamente se despide. Como… como que había expresado que su señor esposo estaba con una condición delicada de salud, me dice que es la cuñada y esa dinámica en ese momento, pues yo lo único que le dije a doña Maribel es "Tenemos que hablar". Y ella me dijo "Claro". (Énfasis nuestro)

Basados en la interacción antes transcrita, los peticionarios afirman que las manifestaciones efectuadas por la Jurado Avilés al Licenciado Cerezo Torres indiscutiblemente son contrarias a aquellas que hizo bajo juramento en la vista del 28 de junio de 1999. Señalan pues, que esto evidencia que esta jurado mintió en tal audiencia al ocultar que le había informado a todos los miembros del jurado el evento en el que uno de los acusados merodeó frente a su negocio.[6] Reclaman pues, que esta mentira impidió que se pudiera auscultar en ese momento la imparcialidad de los restantes miembros del jurado, lo que vulneró su derecho a un debido proceso de ley y un juicio justo e imparcial.

Específicamente, en su argumentación niegan que lo manifestado por la Jurado Avilés, según testificado por el Licenciado Cerezo Torres, no demostrara que se afectó el proceso deliberativo llevado a cabo en su contra. Esto así, porque una revisión de las manifestaciones hechas durante el juicio versus aquellas hechas al abogado evidencian que la Jurado Avilés mintió. Dicha mentira, argumentan, causó que el TPI examinara durante el juicio solamente la imparcialidad de dos jurados y no la de la totalidad de quienes emitieron el veredicto.

---

[6] En dicha audiencia, a preguntas del Juez, la Jurado Avilés manifestó que solamente le comunicó el incidente a la Jurado Blanca Malavé Peña. Véase página 120 del apéndice, líneas 6-14.

Además de lo hasta aquí consignado, en su recurso los peticionarios afirman que la prueba desfilada durante la vista para atender la moción bajo la Regla 192.1 de Procedimiento Criminal, *supra*, no se trata de meras inferencias ni argumentos especulativos. Por el contrario, sostienen que mediante el testimonio no impugnado del Licenciado Cerezo Torres se probó que **todo el jurado** conocía del incidente que requirió la vista evidenciaria durante el juicio. Con tal fin, señalan que una moción bajo la Regla 192.1 requiere una carga probatoria de preponderancia de prueba y que esta fue cumplida. Por todo esto, aseveran que el TPI abusó de su discreción al negar la celebración de un nuevo juicio, debiendo ceder la deferencia que como norma general merecen las decisiones del foro primario.

El Ministerio Público, por su parte, discute que la prueba presentada por los peticionarios a los fines de demostrar la procedencia de un nuevo juicio es una débil. Específicamente, señalan que su petición descansa en lo que alegadamente expresó una persona que fue miembro del jurado que ni siquiera fue citada a testificar. Así, afirma que la solicitud del mecanismo de nuevo juicio instada por los peticionarios descansa en generalizaciones y especulaciones insuficientes en derecho para concederlo.

A los fines de cumplir con nuestra función revisora analizamos los planteamientos sometidos por las partes, escuchamos la regrabación de la vista de Regla 192.1 incluida por los peticionarios como parte del apéndice de su recurso y leímos la transcripción de tal audiencia, así como aquella celebrada durante el juicio el 28 de junio de 1999. Así hecho, no encontramos razones que nos muevan a modificar el dictamen recurrido, por lo que resolvemos expedir el auto de *certiorari* solicitado por los peticionarios y confirmar la determinación recurrida. Veamos.

La garantía constitucional de ser juzgado por un Jurado forma parte del debido proceso. Esto significa que los miembros del Jurado deben ser

indiferentes, o sea, juzgar sin ánimo prevenido y que se presume que el Jurado ha actuado de ese modo. Pueblo v. Miranda Santiago, 130 DPR 507, 523 (1992) citando a Pueblo v. Padros García, 99 DPR 384,394 (1970). (Énfasis nuestro). Como indicamos, es basándose en este precepto que los peticionarios reclaman que el testimonio del Licenciado Cerezo Torres en cuanto a lo que la Jurado Avilés le manifestó en su breve encuentro prueba que esta mintió bajo juramento durante la breve audiencia celebrada el 28 de junio de 1999. También demandan que las expresiones hechas al abogado por la Jurado Avilés siembran duda en cuanto a la imparcialidad de todos los miembros del jurado al momento de juzgarles, por lo que debe concederse un nuevo juicio.

No obstante, aunque niegan la naturaleza especulativa que el foro primario le atribuyó a las consecuencias que los acontecimientos del caso tuvieron sobre el proceso deliberativo del jurado, lo cierto es que los peticionarios no lograron en forma alguna rebatirla. Nuestro ordenamiento es claro en cuanto a que el veredicto de un jurado no puede ser alterado por razón de indebida presión o influencia a menos que haya prueba *prima facie* de que ese extraño elemento pervirtió la decisión. Pueblo v. Figueroa Rosa, 112 DPR 154 (1982).

En el presente caso, el foro primario **no recibió testimonio directo de la Jurado Avilés** tendente a establecer que mintió al tribunal al ser entrevistada allá para el año 1999. Es ante este innegable hecho que coincidimos con la decisión alcanzada por el foro primario en cuanto a que el testimonio del Licenciado Cerezo Torres no constituye la prueba *prima facie* que es exigida para dejar sin efecto el veredicto emitido contra los peticionarios. Tal cual correctamente señaló el TPI, todos y cada uno de los argumentos que presentan los peticionarios para obtener la celebración de un nuevo juicio descansan en la interpretación que el abogado dio a las manifestaciones hechas por un miembro del jurado en un breve encuentro

años luego del juicio y las posibles consecuencias que este entiende tuvo ello para con el resto. Por lo antes expresado, no vemos razón para revocar la resolución recurrida.

Los jueces no debemos ser tan inocentes como para creer lo que nadie más creería. Pueblo v. Luciano Arroyo, 83 DPR 573 (1961). Nos resulta increíble pensar que una persona que bajo juramento y dentro de las formalidades de un proceso judicial declaró un hecho, muchos años después admita- así sin razón o motivo- haber mentido. No tenemos, pues la persona a la que se le imputa la mentira no fue citada a declarar, contexto alguno sobre las expresiones efectuadas.

IV

Por los fundamentos que preceden, expedimos el auto solicitado y confirmamos la *Resolución* emitida el 26 de octubre de 2023, por el Tribunal de Primera Instancia, Sala Superior de Arecibo.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones